**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**SHERRI ANN BOGGESS,**

     **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 2:21-CV-00287**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered May 11, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgement on the Pleadings (ECF No. 10), as well as Defendant's Brief in Support of Defendant's Decision (ECF No. 11).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's motion for judgment on the pleadings (ECF No. 10), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 11); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

<u>**Procedural History**</u>

The Plaintiff, Sherri Ann Boggess (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on February 19, 2019 alleging disability beginning February 1, 2019 due to auto immune hepatitis, rheumatoid arthritis, asthma, anxiety and bladder prolapse. (Tr. at 11, 62, 202-203, 249) Her claim was initially denied on May 3, 2019 (Tr. at 111-115) and again upon reconsideration on June 26, 2019 (Tr. at 119-125). Thereafter, Claimant filed a written request for hearing on August 1, 2019 (Tr. at 126-127).

An administrative hearing was held on November 5, 2020 before the Honorable M. Drew Crislip, Administrative Law Judge ("ALJ"). (Tr. at 51-76) On December 24, 2020, the ALJ entered an unfavorable decision. (Tr. at 8-30) On January 4, 2021, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 36-39) The ALJ's decision became the final decision of the Commissioner on March 19, 2021 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On May 10, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) Defendant (hereinafter referred to as "the Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8) Subsequently, Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 11) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 52 years old as of the alleged onset date, defined as a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d). (Tr.

at 78) Claimant has a high school education and last worked as a data entry clerk. (Tr. at 250)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.
>
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the

scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found Claimant met the insured status requirements through December 31, 2023. (Tr. at 13, Finding No. 1) Next, the ALJ determined that Claimant satisfied

the first inquiry because she had not engaged in substantial gainful activity since February 1, 2019, the alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: fibromyalgia; Sjogren's syndrome; autoimmune hepatitis; degenerative disc disease of the cervical spine; asthma; major joint disease of the right shoulder; and anxiety disorder. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except

> she can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an eight-hour workday and she can stand and/or walk for six hours in an eight-hour workday. She must alternate from sitting to standing or walking for two to three minutes every hour. She must alternate from standing or walking to sitting for two to three minutes every one-half hour. With capacity to remain on task during all position changes, some of which would be covered by typical work breaks and time off task. The claimant can occasionally use foot controls; frequently use hand controls; she can frequently reach in all directions; and she can frequently handle. She can occasionally climb ramps and stairs, balance, and stoop, but she can never climb ladders, ropes or scaffolds, kneel, crouch or crawl. She can never work at unprotected heights, never in proximity to moving mechanical part or dangerous machinery, and never operating a motor vehicle. She can never work in weather, never in humidity and wetness, never in dust, odors, fumes and pulmonary irritants, never in extreme cold, never in extreme heat, never in vibration. The claimant is able to interact with supervisors, coworkers, and the public occasionally. She cannot perform teamwork or customer service. The claimant's time off-task in addition to normal breaks would be 10 percent in an eight-hour workday.

(Tr. at 17, Finding No. 5)

At step four, the ALJ found that Claimant is capable to perform her past relevant work as a data entry clerk. (Tr. at 22, Finding No. 6) However, the ALJ also made an alternative step five finding that based on her age, education, past relevant work and RFC, Claimant is capable of performing other jobs in the national economy. (Id., Finding No. 7) Finally, the ALJ determined

6

Claimant had not been under a disability since February 1, 2019 through the date of the decision. (Tr. at 23, Finding No. 8)

**Claimant's Challenges to the Commissioner's Decision**

Claimant has asserted that the ALJ's RFC assessment is not supported by substantial evidence because he cherry-picked facts to support a finding of non-disability and failed to explain how he determined Claimant was capable of frequent use of her upper extremities and handling. (ECF No. 10 at 7-10) Additionally, Claimant argues that the ALJ's evaluation of the intensity, persistence, and limiting effects of Claimant's symptoms on her functional limitations did not comply with Social Security Ruling ("SSR") 16-3p. (Id. at 10-13) Claimant argues the final decision is not supported by substantial evidence and asks the Court to remand this matter to correct these errors. (Id. at 13)

In response, the Commissioner contends that the ALJ not only discussed the relevant evidence of record and appropriately assessed the resulting RFC based upon same, but also is not obligated by law to abide by any expert's opinion in determining the RFC; in this case, the record as a whole did not support any more restrictive limitations. (ECF No. 11 at 6-10) The ALJ also appropriately evaluated Claimant's subjective statements against the evidence of record, and articulated his reasons for his conclusions in compliance with legal standards. (Id. at 11) The Commissioner argues the final decision is supported by the substantial evidence and asks this Court to affirm. (Id. at 12)

**The Relevant Evidence of Record**[1]

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

The Medical Evidence:

During a rheumatology visit on March 14, 2018, Claimant reported positive ANA (Tr. at 406). A liver biopsy revealed chronic hepatitis with mild to moderate activity and periportal fibrosis (Tr. at 369).

On May 17, 2018, Claimant complained of fatigue and nausea (Tr. at 461); she was diagnosed with autoimmune hepatitis, abdominal bloating, and nausea, and prescribed Prednisone. (Tr. at 463).

On November 2, 2018, Claimant underwent a colonoscopy for ascending colon polyp (Tr. at 492); a biopsy was unrevealing. (Tr. at 555)

On April 3, 2019, Claimant complained of heart fluttering, pain under her left breast, and tingling on the left side (Tr. at 652). She was diagnosed with chest pain, palpitations, and paresthesia (Tr. at 653). A carotid duplex study dated April 24, 2019 showed very mild stenosis of the left and right internal carotid artery. (Tr. at 664). A nuclear stress study dated April 26, 2019 was unrevealing (Tr. at 667-668) and a Holter monitor report was benign (Tr. at 677).

At the request of the Agency, Claimant underwent a psychological consultative examination on April 30, 2019. She alleged disability due to depression and anxiety (Tr. at 694-695). Mental status examination demonstrated depressed mood and restricted affect (Tr. at 696). Consulting psychologist Melinda Henline, M.A., diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder, and opined that Claimant was moderately limited in social functioning (Tr. at 697).

A cervical MRI dated June 11, 2019 revealed multilevel spondylosis (Tr. at 788). On July 11, 2019, Claimant complained of pain of bilateral hips and knees and morning stiffness (Tr. at 799). She exhibited tenderness in the lower extremities for which physical therapy was ordered (Tr. at 802). Between July 2019 and August 2019, Claimant attended physical therapy for cervicalgia, trochanteric bursitis, left hip, and bilateral knee pain (Tr. at 702-721).

On January 22, 2020, Claimant complained of all over body pain and joint pain (Tr. at 941). She also complained of bilateral hand numbness and tingling (Tr. at 942). She was prescribed Naltrexone (Tr. at 944). On August 6, 2020, Claimant reported no improvement in her symptoms (Tr. at 971). She exhibited 18/18 FMS tender points (Tr. at 974). Leah Triplett, D.O., diagnosed autoimmune hepatitis, fibromyalgia, and Sjogren's syndrome (Id.).

On September 4, 2020, Claimant complained of right shoulder pain (Tr. at 1012). She underwent a right shoulder MRI on October 6, 2020 which revealed a full-thickness, partial width tear of the supraspinatus tendon, high-grade partial-thickness interstitial tearing in the distal subcapularis fibers at the attachmenton the lesser tuberosity, and moderate tendinosis of the intra-articular portion long head biceps tendon (Tr. at 1017).

**The Administrative Hearing:**

Gilberto Munoz, M.D., Medical Expert (ME) Testimony:

The ME noted Claimant's physical impairments, but opined none met or equaled any listing. (Tr. at 57) He testified that they would limit Claimant to lifting and carrying 10 pounds occasionally, less than 10 pounds frequently and sit for six hours, with a combination of two hours. (Id.) The ME further testified that all of the postural would be occasional, with the exception of climbing ladders, ropes and scaffolds; she cannot work in unprotected heights, moving mechanical

parts, no commercial driving; occasional exposure to extreme cold, wetness, humidity, vibration, fumes, odors, dust, gases, and poor ventilation. (Tr. at 57-58)

<u>Mary Buban, Psy.D., Medical Expert (ME) Testimony:</u>

The second ME testified that based on the evidence of record, none of Claimant's mental impairments met or equaled any listings. (Tr. at 59) She determined that Claimant had mild limitations in understanding, remembering and applying information; in concentrating, persisting and maintaining pace; and in adapting and managing oneself (Tr. at 59, 60); she testified that based on Claimant's anxiety, that she had moderate limitations in interacting with others. (Tr. at 59)

<u>Claimant Testimony:</u>

Claimant testified that she quit working after she got sick with autoimmune hepatitis; she was very nauseated, which were triggered by several smells at her work. (Tr. at 62) She also stated that her arms, hips, back, neck, hands and legs hurt from typing all day; when she would stand up, her feet had a tingling pain that made her unstable. (Tr. at 62-63) She also had brain fog and could not concentrate, which caused her to make mistakes and slowed her productivity; she also endorsed fatigue and having to sleep all day and night, and that she missed a lot of work, causing her to feel as if she was not pulling her weight. (Tr. at 63, 65, 66) Sounds, such as a coworker coughing, also aggravated her. (Tr. at 63)

Claimant testified that her nausea, fatigue and joint pain have worsened, and that she had fallen twice, injuring her shoulder for which she will need to have repaired. (Tr. at 64) She attributed her falls to losing her balance when she walks due to feet pain. (Tr. at 64-65)

She testified that her hands are more painful now, where she has to grip a cup of coffee with both hands; they feel like she had them in the snow. (Tr. at 66-67) Because she is right-

handed, she feels as if she's weaker in that hand and arm, and uses both hands to hold things, such as a coffee pot, due to lack of strength. (Tr. at 67)

Claimant also testified that her anxiety causes issues with IBS, and that she cannot go anywhere without knowing there's a bathroom. (Tr. at 68) For her asthma, she always carries an inhaler, and that since COVID, wearing a mask makes her feels more nauseated and unable to breathe. (Tr. at 68-69)

Nancy Shapero, Vocational Expert (VE) Testimony:

In response to the ALJ's hypothetical individual of Claimant's age, education, and work background, who could perform light work with the controlling RFC, the VE testified that the individual could perform Claimant's past relevant work, as well as other jobs, including mail clerk, price marker, and electronics inspector (Tr. at 70-72). In response to questioning by Claimant's attorney, the VE testified that if the individual were limited to frequent handling, fingering and feeling, then the individual would be unable to perform the past relevant work as a date entry clerk under the Dictionary of Occupational Titles (DOT) definition for that job, which describes the fingering as constant. (Tr. at 73) The VE further opined that if the individual were limited to no pace or production work, then the individual would be unable to perform the past relevant work as a data entry clerk. (Id.) However, based on the VE's familiarity with data entry clerk jobs, as well as her education and training, the VE opined that even if limited to only frequent fingering, and despite the DOT definition calling for constant fingering, the individual can still perform that past relevant work. (Tr. at 74) The VE testified that it had been five years since she placed anyone in the data entry clerk job. (Tr. at 75)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment:

As noted *supra*, Claimant takes issue with the ALJ's treatment of Dr. Munoz's testimony – accepting certain portions of the opinion, while rejecting others, resulting in a flawed and unexplained RFC determination.

As an initial matter, it is important to remember that the RFC determination is the most a claimant can do despite her restrictions or limitations, and is *solely* an administrative assessment

made by the adjudicator based on all the relevant evidence in the record – no medical opinion necessary.[2] See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed. App'x. 226, 230-231 (4th Cir. 2011). Therefore, to the extent Claimant argues the ALJ erred by deviating from Dr. Munoz's opinion in making the RFC assessment, this argument lacks merit. Additionally, while Claimant correctly points out there is no treating or examining opinion of record concerning her RFC, to the extent Claimant contends that the ALJ's failure to send Claimant to a consultative examiner or to request interrogatories from a medical expert on this issue is a dereliction of his duty to develop the record (ECF No. 10 at 9-10), this contention also lacks merit. Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976). It is significant that Claimant failed to carry her burden of establishing a *prima facie* entitlement to benefits, given that the ALJ found she remained capable of performing her past relevant work. Claimant does not explain how she is more limited or what evidence was lacking for the RFC determination. In any event, the ALJ provided Claimant with a full and fair hearing given that two medical experts gave testimony after having an opportunity to review the entire medical record.

---

[2] As with the RFC assessment, only the ALJ is responsible for finding whether Claimant met the statutory definition of disability. 20 C.F.R. § 404.1527(d).

Regarding Dr. Munoz's testimony, while the ALJ generally agreed with his opinion, he did not find persuasive the greater limitations concerning Claimant's ability to push, pull, carry and lift ten pounds occasionally and less than ten pounds frequently. (Tr. at 20) However, the ALJ did find Dr. Munoz's opinions concerning Claimant's postural and environmental limitations persuasive, explaining that Dr. Munoz "is the only medical doctor that had the opportunity to review the record in its entirety", and further noting that Dr. Munoz's findings "have been used as a strong basis in the crafting of the claimant's [RFC]." (Id.) The ALJ stated that he departed "slightly" from Dr. Munoz's findings, even "*adding greater limitations*" based upon the ALJ's review of the entire record, "including the claimant's testimony that Dr. Munoz did not have the opportunity to consider." (Id.) (emphasis added) Of further interest here, the ALJ noted

> even if I had accepted Dr. Munoz's opinion that the claimant would be limited to lifting carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds frequently and standing and/or walking two hours in an eight-hour workday, the claimant would still be found not disabled, as, per vocational expert testimony, the claimant would be capable of her past relevant work.

(Id.) Clearly, the ALJ had no duty to adopt all the limitations endorsed by Dr. Munoz, or even to articulate why some limitations were adopted and others not. See 20 C.F.R. § 404.1520c(b)(1) ("The articulation requirement applies for each source, but not for each opinion of that source separately."), thus, the ALJ discharged his duty pursuant to Regulations.

Regarding Claimant's argument that the ALJ did not explain the limitation of frequent use of hand controls, reaching in all directions and in handling, it is noted that the ALJ first found that the evidence concerning Claimant's joint disease failed to demonstrate an inability to perform fine and gross movements effectively in her upper extremities; the record supported a finding for normal joint strength, sensation, and full range of motion. (Tr. at 14, 370, 412, 423, 427, 432, 437,

638, 657, 692, 801, 808, 818, 938, 943, 947, 973)[3] While the ALJ recognized Claimant experienced joint pain and tenderness associated with fibromyalgia and Sjogren's Syndrome, physical assessments show full and painless range of motion and now weakness or numbness in her extremities. (Tr. at 18, 620-669, 670-693, 694-699, 722-788, 854-859, 920-923, 925-949, 959-975, 1011-1017) With respect to Claimant's right shoulder surgery repair, the ALJ acknowledged she has a history of a couple of falls and that she experienced pain, with an MRI confirming a full thickness tear of the supraspinatus tendon and moderate tendinosis. (Tr. at 19, 1011-1017)[4] However, the ALJ also noted that upon physical examination, Claimant had full range of motion, no palpable tenderness, full motor strength with external and internal rotation at the elbow at the side, with no deformity or instability. (Tr. at 19, 1018-1021)[5] The ALJ observed that the record showed this condition was treated conservatively and there was no documentation suggestive of any further limitation than those set forth in the RFC. (Tr. at 19) However, "[i]n an effort to accommodate the claimant's cervical disc disease and right upper extremity impairment, the claimant has been limited to less than a full range of light exertion with limitations in postural functioning and in reaching, handling, and fingering[.]" (Id.)

In sum, contrary to Claimant's argument, the ALJ clearly explained how he determined she could frequently use hand controls, frequently reach in all direction, and frequently handle. The ALJ discussed what evidence was more persuasive and supportive of his conclusions and

---

[3] The ALJ referenced an outpatient medical record from Cabell Huntington Hospital dated March 22, 2018; treatment records from Mountain State Medicine and Rheumatology dated January 11, 2019, March 14, 2018, July 11, 2019, August 14, 2019, August 28, 2019, October 16, 2019, January 22, 2020, May 6, 2020, and August 6, 2020; treatment records from Mountain State Medical Associates dated April 16, 2019; and a new patient record from Jashvantial K. Thakkar, M.D., cardiologist, dated April 16, 2019.

[4] This reference concerns radiology and treatment records from Mountain State Medical Associates dated September 4, 2020 through October 6, 2020.

[5] The ALJ cited treatment records from Orthopedic Healthcare Associates dated October 19, 2020.

provided an adequate explanation for the RFC findings allowing for meaningful review. See, DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment is supported by substantial evidence.[6]

Evaluation of Symptoms in Disability Claims:

Claimant also asserts that the ALJ's analysis of her subjective complaints is unsupported by substantial evidence because it did not comply with the factors enumerated under SSR 16-3p, as he relies upon the objective medical evidence to discredit Claimant's allegations of symptoms. (ECF No. 10 at 12-13)

SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be

---

[6] Claimant also argued that the ALJ's finding Claimant remained capable of frequent use of hand controls, reaching in all directions and handling caused reversible error at "step five" (ECF No. 10 at 9), she overlooks the fact that the ALJ found she remained capable of her past relevant work at step four. Regardless, while Claimant points out that one of the jobs identified at step five requires constant handling – "electronics inspector" (See DICOT 726.687-038 (G.P.O.), 1991 WL 679639) – the ALJ still satisfied his legal requirements in making an alternative finding at the fifth step because the vocational expert identified at least "one" occupation Claimant could still perform. See 20 C.F.R. §404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added).

evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

While Claimant does not specify how the ALJ's evaluation of her subjective complaints violated legal standards, other than conclusively stating that he improperly discounted her allegations due to the lack of objective medical corroboration, it must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

Recently, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant,

if not critical, aspect of the <u>Arakas</u> holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. <u>Id</u>. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting Claimant's complaints.

In the written decision, the ALJ noted Claimant

> reported that she did not "have much interest to do anything due to pain and feeling sick all the time." She indicated that her joints were "very stiff and painful." Moreover, she reported having "overwhelming fatigue." Finally, she reported having "abdominal pain with sitting and standing[.]"

(Tr. at 18, 278-285)[7] After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 18)

The ALJ then reviewed the medical records, discussed *supra*, and made several significant observations: first, regarding Claimant's complaints of joint pain and stiffness, physical assessments showed "full and painless range of motion and no weakness or numbness in the extremities"; next regarding her asthma, physical exams showed no dyspnea, cough, hemoptysis, or wheezing; and regarding her anxiety, the ALJ noted it had been "generally controlled with little treatment" and that Claimant "consistently denied anxiety, depression and sleep disturbance" to her providers.  (<u>Id</u>.) The ALJ further acknowledged that Claimant "alleged significant pain made worse with activity", he noted

---

[7] The ALJ referred to Claimant's Function Report dated June 12, 2019.

> that the claimant may be particularly sensitive to pain or on the other hand, quite stoic and able to withstand pain more successfully than the average individual. While I do not discount the claimant's testimony or statements to medical professionals in the written record that she experiences a quite significant level of pain, I do not find the statements particularly persuasive, as such self-reports are terribly subjective. However, in an effort to assess the record in its entirety, I have accepted these self-reports and have accounted for them in the residual functional capacity.

(Tr. at 19) In addition to little corroboration with the objective medical evidence, the ALJ also recognized that despite her impairments, both physical and mental, other evidence of record indicated Claimant's allegations were not so limiting: she is able to run errands, visit family and friends, attend yard sales, participate in routine day-to-day activities; she is independent in personal skills and participates in routine household chores (Tr. at 16, 17, 20).

In Hines v. Barnhart, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1995)). Following his review of the medical and other evidence of record, while the ALJ recognized Claimant suffers from severe back issues and residual pain "that are significantly limiting, those limitations . . . do not preclude all work." (Tr. at 21) Of further significance is that the ALJ also observed that "even when a more restrictive residual functional capacity was posed to the vocational expert, she was able to testify . . . . that the claimant could perform [her] past relevant work", a data entry clerk, "performed at sedentary exertion" (Tr. at 21-22).

Given the conflicting evidence consisting of Claimant's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether Claimant is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig, 76 F.3d at 589. The ALJ provided an adequate review that included not only Claimant's testimony, but also the objective medical evidence of record and other evidence of record. In short, the ALJ provided a fairly thorough and adequate review of Claimant's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that her symptoms did not limit her to the extent alleged.[8] Indeed, while the ALJ did not specifically find that Claimant's conservative treatment of her physical impairments were dispositive of his conclusions, the law does not require one to be pain-free of experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, it is clear that the ALJ did not select only those portions from the objective medical evidence that failed to support Claimant's allegations of disabling impairments, as he also considered the objective medical evidence that did support her claims, as well as her testimony and other evidence, both supporting and non-supporting.[9]

---

[8] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig, 76 F.3d at 589)).

[9] For instance, though not specifically raised as an issue on appeal, it bears mentioning that the ALJ considered Claimant's asthma, which he found to be a severe impairment (Tr. at 13), and noted that while Claimant made some complaints of shortness of breath, she also generally denied that allegation (Tr. at 670-693, 925-949, 985-999). The ALJ also noted that there were minimal positive physical findings, but the ALJ took all this evidence into consideration when he included certain environmental limitations in the RFC assessment (Tr. at 19). Indeed, while the ALJ found Claimant had only mild limitations in interacting with others (Tr. at 16), he still adopted Dr. Buban's moderate restrictions in this area of functioning, and incorporated those accommodations in the RFC assessment (Tr. at 21). These are just additional examples of the ALJ considering both supporting and non-supporting evidence from the overall record in his analysis of Claimant's statements about the intensity, persistence, and limiting effects of her symptoms and finding them inconsistent.

The undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in her evaluation of Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms, and that the ALJ's conclusion that Claimant's statements were inconsistent with the evidence of record complied with the applicable law and is supported by substantial evidence.

Finally, the undersigned further **FINDS** that the final decision denying Claimant's application for benefits is supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's motion for judgment on the pleadings (ECF No. 10), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 11), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: December 9, 2021.



Omar J. Aboulhosn
United States Magistrate Judge